| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

JONATHON MCINTOSH, §
§
     Plaintiff, §
*versus* §     CIVIL ACTION H-06-1968
§
§
DAVID PARTRIDGE, §
§
     Defendant. §

# Opinion on Summary Judgment

1.    *Introduction.*

An employee of a state agency was suspended after returning from active duty in the Navy Reserves. He sued claiming that the agency violated the federal law forbidding employers from discriminating against members of the armed services. He also claimed the agency denied him the process he was due by not granting him a hearing to contest the suspension. The claims fail because the suspension was unrelated to his military service and because the agency's process was constitutionally thorough.

2.    *Background.*

Jonathon McIntosh is director of dentistry at the Richmond School – a Texas home for people with mental and physical disabilities. He is also a member of the United States Navy Reserve. In 2004 and 2005, McIntosh was on active duty in Iraq and Kuwait.

McIntosh is the dentist for the residents at the home. In his absence, the home – part of the Texas Department of Aging and Disability Services – hired another dentist to fill this place. The replacement reported that the residents' teeth were in poor condition and that many residents were in need of routine cleanings before their conditions could even be properly assessed.

The agency reviewed the dentistry at the home, and it found problems with the dentistry McIntosh had performed. Many residents suffered from extensive tooth decay and gum problems that were not treated or even recorded correctly in their charts.

David Partridge is the medical director at Richmond and McIntosh's direct supervisor. When McIntosh returned from the military, Partridge placed him on paid

leave. Partridge also reported the problems with McIntosh's practice to the state's dental examiners.

McIntosh requested a hearing to review the suspension, but the agency held none. McIntosh then sued Partridge saying his rights under the Uniform Services Employment and Reemployment Rights Act were violated and that he was denied due process and equal protection of law. U.S. CONST. amend. XIV; 38 U.S.C. § 4311 (2006); 42 U.S.C. § 1983 (2006).

He also said that the agency defamed him when it reported the problems with his work at the home to the state's board of dental examiners. The defamation claim was dismissed for failure to state a claim. As McIntosh's employer, the agency had a qualified privilege to make the statements to the state's dental examiners and made them without malice. *See Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex. App.–Houston [14th Dist.] 1981, no pet.). The statements are not actionable.

The agency – on behalf of Partridge – moved for summary judgment on the employment and due process claims, arguing that McIntosh could not establish that his suspension was motivated by his military service or that the agency violated his liberty or property interests. McIntosh moved for partial summary judgment that the agency violated his equal protection and due process rights by not granting him a hearing. Taking all the facts in the light most favorable to McIntosh, the agency prevails.

3.  *Summary-Judgment Evidence.*

McIntosh says that the evidence the agency relies on for a summary judgment cannot support the motion. He is wrong. All of the evidence the agency submitted establishes his supervisor's state of mind when he made the decision to suspend McIntosh. It would be admissible at trial and is competent evidence for summary judgment.

Further, McIntosh complains that he did not receive the process due under his circumstances. The agency shared the reports of its investigations into his dental practice with him. The reports and documents from that investigation are, therefore, also admissible to establish the constitutional sufficiency of the agency's process.

4.  *Reemployment.*

The Uniform Services Employment and Reemployment Rights Act protects the jobs of civil military personnel recalled to active duty. 38 U.S.C. § 4301 (2006). Under

the act, an employer's adverse action cannot be motivated by the employee's membership in the military. 38 U.S.C. § 4311. If the employer would have acted against the employee regardless of the employee's membership or absence for service, the action is not discriminatory. 38 U.S.C. § 4311(c).

### A.     Jurisdiction.

The agency argues that this court lacks subject jurisdiction over McIntosh's employment claim because the act allows individuals only to sue states in state courts. It further contends that the act did not abrogate the states' Eleventh-Amendment immunity from suit.

The jurisdiction section of the act was amended in 1998. The act currently says that the federal district courts *shall have jurisdiction* in cases where the United States sues a state or where an individual sues a private employer. The current version also says that actions brought by an individual against a state *may be brought* in a state court. 38 U.S.C. § 4323(b)(2) (emphasis added). The former version of the statute said that an action against a state lies in any federal district in that state, regardless of who sued it.

The agency sees this change as evidence that Congress intended to restrict jurisdiction in cases brought by individuals against states. It is wrong.      *May* is permissive – not exclusive or mandatory. If Congress had wanted to restrict cases, it would have said that actions *must* be brought in state courts. The statute allows for state-court jurisdiction without requiring it in suits by individuals against the state.

Texas asserts that it is immune from the ordinary processes of American law. This claim to semi-nationhood is made 162 years after Texas voluntarily abandoned its sovereignty to be absorbed into the constitutional Union and   142 years after she was forcibly restored to that Union. It is historical. For this case, assume that sovereign immunity is something that the Founders would recognize as part of the Constitution they designed to defend people against the abuses of government, and then assume that the state governments have it.

The agency relies on decisions by courts that have encrusted the constitutional mandate of government under law with gratuitous exceptions. Even with the assumptions, Texas through the agency and Partridge must show that it fits one of the discovered immunities. It even points to a vacated decision to argue that the act does not abrogate state sovereign immunity. *Velasquez v. Frapwell*, 160 F.3d 389 (7th Cir. 1998), *vacated in part*, 165 F.3d 593 (7th Cir. 1999). This is also wrong.

Texas argues that the national legislature's powers about the military do not override the presumptive immunity of the state as a sovereign. Having run a Revolution that lasted seven years through a committee of representatives of sovereignties, the Founders confided military matters to the national government. While most of the so-called war powers are restrictive, the structure of them is unequivocal.

Congress has the responsibility to:
- Authorize letters of marque.
- Furnish a navy.
- Regulate the armed forces.
- Organize, arm, discipline, and call state militias.
- Declare war.

States are forbidden to do anything other than have militias for national purposes and immediate self-defense. In parallel, states are forbidden from exercising their residual authority over most of the topics of national authority like coining money, foreign trade, customs, treaties, and making war.

An amendment in 1795 to restrict the judicial authority of the United States from diversity of jurisdiction suits cannot be read even by the most supine apologist for government to have intruded into the national military responsibilities in the original text. Texas's logic would say that the United States could not enact a law that allowed a person to sue his state for its physical interference with her registration for the draft.

The national courts have jurisdiction over claims arising out of a national statute to protect national sailors.

### B. Employment Claim.

McIntosh did not establish that his suspension was motivated by his military service at all. The timing of an adverse employment action hard on leaving for active duty can serve as circumstantial evidence of discrimination. *See Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1014 (Fed. Cir. 2001). McIntosh was the director of dentistry at the home, and no other dentist was on staff. His malpractice did not come to light until after he had reported for duty.

The suspension is also lawful because the agency has shown that it would have suspended McIntosh regardless of his military service. The agency is charged with protecting the health of the home's residents, so it must suspend an employee who has most likely committed malpractice on those residents. Shortly after she started at the

home, the replacement for McIntosh told the home's director that the residents' teeth and gums were in poor condition. Another dentist from the agency reviewed the program and found problems with McIntosh's work. The agency also brought in an outside dentist who reviewed the patients' charts and conditions; he concluded that the residents in the home had not gotten the proper level of care under McIntosh. If the agency had failed to act on these reports, it would have been derelict in performing its duties to the residents.

4. *Governmental Regularity.*

McIntosh complains that the agency violated his constitutional rights by failing to abide by its internal regulations that require a hearing on worker discipline when an employee requests one. The agency says that because it has merely suspended McIntosh with pay – rather than firing him – his liberty has not been damaged. The Constitution requires regular governmental operations – non-arbitrary ones.

    *A.    Due Process.*

McIntosh must establish that he was deprived of a liberty interest by someone acting under color of law. One of the components of liberty is the enjoyment of property. He complains about the arbitrary deprivation of his property interest in his job.

Under the agency's standards, McIntosh cannot be fired without good cause. This indicates that his job was a sufficient commitment by the state to be recognized at law as property. *Bolton v. City Dallas*, 472 F.3d 261, 264 (5th Cir. 2006).

Of course, McIntosh has not been fired. He has been suspended with pay. Full pay while suspended means that he has retained the tangible benefits of his position. Pay without work would hardly be viewed by a disinterested person as deprivation. *Richards v. City of Weatherford*, 145 F. Supp. 2d 786, 791 (N.D. Tex. 2001). On the other hand, a suspension with pay may still carry a stigma that limits future economic opportunity, and it is a disruption of a career. Without holding that these are protect able, even if the long-running suspension is taken as a termination, McIntosh's claim would still fail.

McIntosh is not entitled to his job under the Constitution; he was required to earn his position by meeting his obligations to his patients. In an important but limited way, the Constitution requires the state to afford him a process to reasonably assure an objectively rational decision given his circumstances. That was his due, and he got it.

Sound procedures are normally defined in principle as notice of the impending

decision and an opportunity to respond.  McIntosh knows what was done and not done at the home by its dentist; he was the dentist.  This is not a case of an action based on a single complaint.  The agency discovered wholesale neglect among its wards.  McIntosh was told of the three layers of cross-checking done by the agency.

After one dentist discovered problems when she took over in McIntosh's absence, the agency had her report confirmed by two others; they all found levels of patient care that were inconsistent with competent attention from McIntosh – from patients' conditions and from their records.

He focuses his complaint on the agency's suspending him without a hearing – assumed to be a meeting with oral evidence, argument, or both.  He has seen these findings and discussed them with agency officers.  That the agency did not convene a specific session for him to attend does not mean that its action was constitutionally offensive.  The Constitution does not enshrine agency regulations.  If an agency disregards its constitutive law or its operating rules it may violate the Constitution if (a) the lack of order pervades the agency, or (b) the disorder affects a principal aspect of a process or substantial interest.  The internal irregularity here was peripheral – leaving the agency operations about McIntosh adequate.

McIntosh has not suggested what he would offer as evidence or argument to the state if he were to have a hearing.  Empty gestures are not required.  The agency did not schedule a hearing before this suit was filed, but has attempted to schedule one while it was pending.  His failure to accept the proffered hearing should moot this point.

The process that is due varies.  The circumstances count.  McIntosh is a medical scientist. He is highly paid in a government position.  His dental responsibilities were not to a clientele he earned in competition with other dentists; his patients were furnished to him, and they were helpless.

A citizen's interest in his job is important, but when it is reconciled with the state's interest in – responsibility for, really – the medical care of its wards, it is the lesser one.  This is not an instance of the common government practice of claiming to be protecting the health of children through some protectionist economic regulation; this is about direct management of actual health care to specific individuals.  In these circumstances, he has had an economic interest adversely affect by a governmental action that was thoroughly researched, cross-checked, and discussed with him.  He has benefitted from regular government.

B.  *Equal Protection.*

McIntosh complains that the agency's failure to hold a hearing on the suspension violates its rules and, consequently, his equal-protection rights.

An American is assured that he will be equally protected by the laws. This means that he must not have been excluded when others in parallel circumstances are included. He can have been excluded by his showing that others like him were generally treated differently. Alternatively, he could show that the law that was used to exclude him employs a criterion that is not rationally related to the accomplishment of the legitimate governmental interest in the program.

McIntosh has not shown – or even pleaded – facts that show similarly situated employees were treated differently or that the agency had an irrational standard that affected him. This legal theory is simply a thoughtless re-argument of his due-process claim.

If his complaint is read to say that the agency discriminated against him because of his military status, that complaint is embodied in the Reemployment Act. *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 437 (E.D. Pa. 1998). While a statute cannot abrogate a citizen's rights under the Constitution, under its authority to enforce this right Congress may prescribe the process – including limits – to enforce the constitutional mandate in this context. This is in addition to its independent authority under other clauses, for Congress could use criteria in a war-powers statute that offended the Fifth or Fourteenth Amendments.

McIntosh's claim is that the denial of a hearing is individually arbitrary; it is not that the system for delays is based on an irrational standard. If the complaint is read to claim that his harm is merely a delay rather than a denial, his hardship of paid vacation is not a injury through delay. A delay that equaled a practical denial could be actionable. Under his circumstances, an outright firing would have been justified.

5.  *Conclusion.*

McIntosh was not suspended because of his military service. While he was on active duty, the agency discovered that his dental practice as its employee was flawed. It investigated and confirmed the problems. On his return, it discussed those findings with him and listened to his explanation, giving him a reliable process. The lack of a formal hearing for a long time while he was on full pay did not deny him protection of the laws equally with others.

Signed on April 30, 2007, at Houston, Texas.

Lynn N. Hughes
United States District Judge